UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| Arthur Sheridan, an individual, and Barbara Sheridan, an individual, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>iHeartMedia, Inc., a Delaware corporation,<br><br>Defendant. | No. 1:15-cv-09229<br><br>**CLASS ACTION COMPLAINT**<br><br>**(JURY TRIAL DEMANDED)** |

## I.  INTRODUCTION[1]

1.  A radio service must ensure that its internet-based and traditional broadcasts of copyrighted sound recordings are authorized, and must arrange to pay royalties before it publicly performs the sound recordings.  A radio service must also arrange to pay royalties to the owner of a sound recording each time the service reproduces the sound recording for purposes of archiving it, maintaining it, and streaming it online. If the radio service fails to arrange and pay required royalties, the use is unauthorized and infringes the sound recording's copyright. Although federal copyright law provides an automatic license and royalty rate for digital public performances of sound recordings created on or after February 15, 1972, no such automatic license exists for recordings created before that date. Instead, state law prohibits the unauthorized reproduction and performance of pre-1972 sound recordings.

2.  Arthur Sheridan and Barbara Sheridan (collectively, "Plaintiffs") are suing iHeartMedia, Inc. ("iHeartMedia" or "Defendant") for their unauthorized and unlawful use of

---

[1] Plaintiffs, by and through their attorneys, based on their individual experiences, make these allegations based on the investigation of counsel, and upon information and belief.

- 1 -

- 2 -

sound recordings initially created before February 15, 1972 (the "Pre-1972 Recordings" or the "Recordings").

3. iHeartMedia has violated and continues to violate Plaintiffs' rights under Illinois law through the marketing, sale, and provision of internet and terrestrial radio services that include Pre-1972 Recordings.[2] This practice unjustly enriches iHeartMedia at the expense of Plaintiffs and class members.

4. iHeartMedia must pay royalties for the use of sound recordings created *on or after* February 15, 1972, which are copyrighted under the Copyright Act of 1976 (the "Copyright Act" or the "Act"). The Act does not, however, extend federal copyright to sound recordings created before February 15, 1972, but specifically provides that states remain free to create remedies for unauthorized use of those Pre-1972 Recordings.

5. Despite its widespread public performance and reproduction of Pre-1972 Recordings protected by state law, iHeartMedia has failed to obtain authorization and pay royalties.

6. Pre-1972 sound recordings redefined popular music in America. iHeartMedia has earned substantial revenue by creating, marketing, and selling advertisements on radio services featuring Pre-1972 Recordings owned by Plaintiffs. But despite the fact that iHeartMedia profits handsomely by advertising and offering these sound recordings to the public, it unlawfully fails to arrange for permission to use (for compensation or otherwise) the sound recordings.

7. iHeartMedia's conduct violates Plaintiffs' rights under Illinois' common law prohibitions of misappropriation, deceptive trade practices, and unjust enrichment. Plaintiffs

---

[2] Throughout this complaint, the term "internet radio" includes internet-based radio stations, including customizable radio stations, and online streaming of traditional AM/FM radio broadcasts.

- 2 -

seek, on behalf of themselves and a class of similarly situated rights holders, compensation from iHeartMedia as well as injunctive relief for violations of Plaintiffs' rights flowing from the unauthorized and uncompensated use of the Pre-1972 Recordings.

## II. JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1322(d), because at least one class member is of diverse citizenship from Defendant, there are more than 100 class members, and the aggregate amount in controversy exceeds $5,000,000.

9. The Court has personal jurisdiction over Plaintiffs because Plaintiffs submit to this Court's jurisdiction. This Court has personal jurisdiction over iHeartMedia, Inc., because iHeartMedia mass-solicits Illinois customers through its interactive website iHeartRadio.com and on-air advertising. iHeartMedia owns several radio stations in Illinois, advertising its internet and terrestrial radio services and offering its mobile device application through these stations, including without limitation Chicago-based radio stations WGRB 1390-AM, WGCI 107.5-FM, WKSC 103.5-FM, WVAZ 102.7-FM, WLIT 93.9-FM, WEBG 95.5-FM.  Each of these stations are well known and popular in the Chicago area. iHeartMedia frequently violates Illinois law to the detriment of Plaintiffs, class members, and listeners, as detailed below, by publicly performing Pre-1972 Recordings in Illinois without arranging or paying royalties.

10. Venue is proper in this District under 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to the claims occurred and/or emanated from this District and iHeartMedia has caused harm to Plaintiffs and class members residing in this District.

### III. PARTIES

11. Plaintiff Arthur Sheridan is a citizen of Illinois and record producer who owns the intellectual property and contract rights in numerous pre-1972 master recordings.

12. Plaintiff Barbara Sheridan is a citizen of Illinois and owns the intellectual property and contract rights in a pre-1972 master recording.

13. iHeartMedia, Inc., is a Delaware corporation with its principal place of business in Texas.

14. Plaintiffs bring this action individually and on behalf of the Misappropriation Class as defined below.

### IV. FACTUAL BACKGROUND

**A. Arthur and Barbara Sheridan**

15. In the 1950s and 1960s, Arthur Sheridan owned and operated several recording companies specializing in recording and selling doo-wop, jazz, and rhythm and blues music. These music labels produced recordings by some of the most influential musicians of the era, including the Flamingos (inducted to the Rock and Roll Hall of Fame in 2001), Little Walter (inducted to the Blues Hall of Fame in 1986 and the Rock and Roll Hall of Fame in 2008), and the Moonglows (inducted to the Vocal Group Hall of Fame in 1999 and the Rock and Roll Hall of Fame in 2000).

16. Arthur Sheridan owns many pre-1972 master recordings, including but not limited to the following fixtures of jazz, blues, and doo-wop music: "Slow Down Woman," "The Mojo," "I Want my Baby," and "How Can I Leave" by J.B. Lenoir; "That's My Desire" and "You Ain't Ready" by the Flamingos; "Evening Sun" by Johnny Shines; "Love is a Pain," and "No Need of Your Crying," "I Had a Feeling" and "Meet Me Baby" by Rudy Greene; "Nervous Wreck" and

"No More Love" by Willie Nix; "Just a Lonely Christmas," "Whistle My Love," "Baby Please," and "Hey Santa Claus" by the Moonglows; "She's Going to Ruin Me" and "I Can't Stand Being Away From You" by T-Bone Walker; "Just Keep Loving Her" by Little Walter; "Merry Lee," "Down Home," "Sweet and Lovely," and "The Talk of the Town" by Howard McGhee; "High and Lonesome" and "Roll and Rhumba" by Jimmy Reed; and "Warm Summer Breezes" and "Heartbreak" by Dee Clarke.

17. Barbara Sheridan owns the pre-1972 master sound recording of "Golden Teardrops" by the Flamingos, critically acclaimed when it was recorded and still regarded as a classic.

18. Arthur and Barbara Sheridan own the intellectual property and contract rights associated with the recordings. These rights include, without limitation, the right to control the use and distribution of the recording, the right to promote the recordings, and the right to receive royalty payments from the exploitation of the master recordings described above.

19. Arthur and Barbara Sheridan continue to market the Pre-1972 Recordings that they own. In particular, Arthur and Barbara Sheridan continue to receive revenue from licenses granted to third parties to publicly perform the recordings.

### B. iHeartMedia Exploits Plaintiffs' and Class Members' Rights Without Permission or Compensation

#### *1) State Law Protection for Pre-1972 Recordings*

20. The Copyright Act creates a federal statutory licensing scheme pursuant to which internet radio companies such as iHeartMedia are required to pay royalties for the public performance of sound recordings protected by the Act. *See* 17 U.S.C. §§ 112(e), 114(d)(2), 114(f). The companies pay these royalties to SoundExchange, a nonprofit entity established by regulation for the collection and distribution of royalty payments under this scheme.

21. The statutory licensing scheme provided by 17 U.S.C. §§ 112(e), 114(d)(2), and

010535-11  806082 V1

114(f) does not extend to Pre-1972 Recordings. Thus, SoundExchange's authority does not extend to the collection and distribution of royalty payments to the owners of copyrights in Pre-1972 Recordings. *See* 17 U.S.C. § 114(g)(2) (requiring SoundExchange to distribute royalties to holders of federal copyrights). The existence of SoundExchange does not alter the issues presented in this action because SoundExchange has no authority to negotiate or collect royalties on behalf of copyright holders for the reproduction and public performance of Pre-1972 Recordings.

22. The Copyright Act specifically provides that Pre-1972 Recordings will not be subject to federal copyright. 17 U.S.C. § 301(c). But nothing in the Copyright Act permits entities such as iHeartMedia to make use of Pre-1972 Recordings without compensation. Indeed, the Copyright Act specifically left states free to regulate the use of works of authorship that it chose not to render subject to federal law. 17 U.S.C. § 301(b)(1).

23. Illinois common law protects Pre-1972 Recordings from being copied, distributed, or otherwise exploited without license or authorization.

### 2) *iHeartMedia*

24. Operating under the name iHeartRadio, iHeartMedia offers internet radio services in the form of customizable music "stations" that stream music to users on the internet. iHeartMedia also owns hundreds of traditional ("terrestrial," or AM and FM) radio stations and streams their broadcasts online.

25. iHeartMedia offers its internet radio services to the public on a non-subscription basis. Users can access iHeartMedia's internet radio services on a variety of internet platforms including computers, digital media devices, tablets, video game consoles, and smartphones.

26. Users of iHeartMedia's customizable stations hear advertisements at periodic intervals between tracks, and may skip only six tracks per station per hour (and fifteen tracks total per day) across all stations. Skipping a track often results in hearing an advertisement.

010535-11 806082 V1

27. iHeartRadio's numerous internet and terrestrial radio broadcasts have included, and continue to include, countless public peformances of Pre-1972 Recordings, all of which have been and continue to be made without any permission from or payment to the owners of the copyright in the Recordings.

28. Moreover, in the course of broadcasting internet and terrestrial radio services that feature Pre-1972 Recordings, iHeartRadio reproduces those Recordings multiple times for purposes of archiving, advertising, buffering, streaming, and otherwise maintaining, accessing, and performing the Recordings.

29. iHeartRadio's internet radio service is delivered by way of web interfaces that promote iHeartMedia's services or are designed to attract users to iHeartMedia's services.

30. iHeartMedia also sells the right to advertise to users on its stations, websites, and applications.

31. iHeartMedia's internet and terrestrial radio services can be accessed throughout the United States, including Illinois. As of June 2015, iHeartMedia reports having over 70 million registered users of its internet radio service. In addition, millions of other users access iHeartMedia's streamed and AM/FM broadcasts of traditional radio stations without registering. Upon information and belief, millions of iHeartMedia users and listeners are located in Illinois.

32. Sales of advertisements displayed or broadcast in the course of iHeartMedia's internet and terrestrial radio services generate millions of dollars of revenue for iHeartMedia each year.

33. iHeartMedia regularly broadcasts to Illinois listeners the "Golden Teardrops" recording and other recordings listed above, as well as many other Pre-1972 Recordings, and has done so repeatedly for the last several years.

34. iHeartMedia has not licensed Pre-1972 Recordings from their copyright owners.

35. Thus, without obtaining authorization or rendering compensation, iHeartMedia has copied and publicly performed Pre-1972 Recordings in violation of Plaintiffs' exclusive rights to perform the Recordings.

36. iHeartMedia has derived significant benefits, including millions of dollars of revenue, from unlawfully exploiting these rights.

## V. CLASS ACTION ALLEGATIONS

37. Plaintiffs Arthur and Barbara Sheridan bring this action under Federal Rule of Civil Procedure 23(b)(2) and (b)(3) on their own behalf and on behalf of the following class of plaintiffs (the "Misappropriation Class"):

> All owners of reproduction and public performance rights in Pre-1972 Recordings that have been publicly performed, copied, or otherwise exploited by iHeartRadio, without a license or other authorization, in the marketing, sale, and provision of internet and terrestrial radio services.

38. The persons in the Misappropriation Class are so numerous that individual joinder of all members is impracticable under the circumstances of this case. Although the precise number of such persons is unknown, the exact size of the Misappropriation Class is easily ascertainable, as each class member can by identified by using iHeartMedia's records. Plaintiffs are informed and believe that there are many thousands of Misappropriation Class members.

39. There are common questions of law and fact specific to the Misappropriation Class that predominate over any questions affecting individual members, including:

   a) Whether iHeartMedia copies, publicly performs, or otherwise exploits Pre-1972 Recordings in its internet and terrestrial radio services without authorization or permission;

   b) Whether such uses are unlawful;

   c) Whether iHeartMedia's conduct constitutes misappropriation;

010535-11 806082 V1

    d) Whether iHeartMedia's conduct violates 815 ILCS 510/1 *et seq.*;

    e) Whether iHeartMedia's conduct constitutes conversion;

    f) Whether class members have been damaged by iHeartMedia's conduct, and the amount of such damages;

    g) Whether punitive damages are appropriate and the amount of such damages;

    h) Whether an order enjoining future unauthorized use of Pre-1972 Recordings in internet and terrestrial radio services is appropriate and on what terms;

    i) Whether iHeartMedia has been unjustly enriched; and

    j) Whether iHeartMedia should disgorge its unlawful profits, and the amount of such profits.

40. Plaintiffs' claims are typical of the Misappropriation Class's claims, as they arise out of the same course of conduct and the same legal theories as the rest of the Misappropriation Class, and Plaintiffs challenge the practices and course of conduct engaged in by iHeartMedia with respect to the Misappropriation Class as a whole.

41. Excluded from the class are iHeartMedia, its employees, co-conspirators, officers, directors, legal representatives, heirs, successors, and wholly or partly owned subsidiaries or affiliated companies; class counsel and their employees; and the judicial officers and associated court staff assigned to this case.

42. Plaintiffs will fairly and adequately protect the interests of the class. They will vigorously pursue the claims and have no antagonistic conflicts. Plaintiffs have retained counsel who are able and experienced class action litigators and are familiar with representing plaintiffs in large-scale copyright, trademark, and right of publicity claims.

43. iHeartMedia has acted or refused to act on grounds that apply generally to the class, and final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole. A class action is also appropriate because iHeartMedia has acted and refused to

take steps that are, upon information and belief, generally applicable to thousands of individuals, thereby making injunctive relief appropriate with respect to the class as a whole.

44. Questions of law or fact common to class members predominate over any questions affecting only individual members. Resolution of this action on a class-wide basis is superior to other available methods and is a fair and efficient adjudication of the controversy because in the context of this litigation most individual class members cannot justify the commitment of the large financial resources to vigorously prosecute a lawsuit against iHeartMedia. Separate actions by individual class members would also create a risk of inconsistent or varying judgments, which could establish incompatible standards of conduct for Defendant and substantially impede or impair the ability of class members to pursue their claims. It is not anticipated that there would be difficulties in managing this case as a class action.

45. Plaintiffs reserve the right to amend all class allegations as appropriate, and to request any state law subclasses or other subclasses if necessary, upon completion of class-related discovery and motions for class certification.

## COUNT I
**(Common Law Copyright Infringement)**

46. Plaintiffs incorporate by reference the allegations in the above paragraphs as if fully set forth herein.

47. The Pre-1972 Recordings, when created, were novel creative works, and were reduced to concrete form when recorded; Plaintiffs and the Misappropriation Class thus have property rights in them as recognized by Illinois common law.

48. By duplicating the Pre-1972 Recordings without authorization from Plaintiffs and Class Members, and publicly performing those Recordings to its users for its own gain,

iHeartMedia misappropriated the Recordings and infringed Plaintiffs' and Class Members' property rights, whereby Plaintiffs and Class Members were damaged.

49. As a result of iHeartMedia's misappropriation of the Pre-1972 Recordings, Plaintiffs and Class Members are entitled to an order enjoining iHeartMedia from continuing to use those recordings without authorization and compensation, and to an order imposing a constructive trust on any money acquired by means of iHeartMedia's misappropriation, including all gross receipts attributable to iHeartMedia's misappropriation of the Pre-1972 Recordings.

50. iHeartMedia's conduct, as described above, constituted a continuous and intentional pattern of misappropriation of Plaintiffs' and Class Members' property, justifying the imposition of punitive damages. iHeartMedia is a high-profile, large-scale media company that is intimately familiar with the mechanics of the music industry and the requirements of intellectual property law. By knowingly misappropriating works without their owners' permission and performing these works to millions of users of internet and terrestrial radio services, iHeartMedia acted and continues to act maliciously and oppressively to injure Plaintiffs and Class Members by depriving them of compensation for the use of the Pre-1972 Recordings. iHeartMedia's continued misappropriation of the Pre-1972 Recordings was at a minimum done with reckless disregard of Plaintiffs' and Class Members' rights in those Recordings.

## COUNT II
**(Violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/1 *et seq.*)**

51. Plaintiffs incorporate by reference the allegations in the above paragraphs as if fully set forth herein.

52. iHeartMedia has used and continues to use the Pre-1972 Recordings for the

commercial purposes of advertising iHeartMedia's internet and terrestrial radio services; providing those radio services; selling advertisements on those radio services; and/or advertising and selling other products and services.

53. iHeartMedia's use of the Recordings and/or identities creates a likelihood of confusion or misunderstanding and represents implicitly that the radio services have the approval of Plaintiffs and Class Members for the use of their Recordings.

54. As a result of iHeartMedia's misappropriation of the Pre-1972 Recordings, Plaintiffs and Class Members are entitled to an order enjoining iHeartMedia from continuing to use those recordings without authorization and compensation, and to an order imposing a constructive trust on any money acquired by means of iHeartMedia's misappropriation, including all gross receipts attributable to iHeartMedia's misappropriation of the Pre-1972 Recordings.

55. iHeartMedia is a high-profile, large-scale media company, intimately familiar with the mechanics of the music industry and the law governing its actions as described above. iHeartMedia's actions, as described herein constitute willful engagement in a deceptive trade practice, making an award of attorneys' fees and costs appropriate under the Uniform Deceptive Trade Practices Act.

**COUNT III**
**(Conversion)**

56. Plaintiffs incorporate by reference the allegations in the above paragraphs as if fully set forth herein.

57. As alleged above, and as recognized under Illinois law, Plaintiffs and Class Members have property rights in the Pre-1972 Recordings, including the right to control the

- 12 -

010535-11 806082 V1

public performance and reproduction of the Pre-1972 Recordings.

58. By duplicating the Pre-1972 Recordings without authorization from Plaintiffs and Class Members, and publicly performing those Recordings to its users for its own gain, iHeartMedia wrongfully assumed control over Plaintiffs' and Class Members' property, and exercised that control in a manner inconsistent with Plaintiffs' and Class Members' property rights.

## COUNT IV
### (Unjust Enrichment)

59. Plaintiffs incorporate by reference the allegations in the above paragraphs as if fully set forth herein.

60. To the detriment and impoverishment of Plaintiffs and the Class, iHeartMedia has been and continues to be unjustly enriched as a result of the unlawful and/or wrongful conduct alleged herein. iHeartMedia has unjustly benefitted through the sale of advertisements in connection with its internet and terrestrial radio services that use without authorization the Pre-1972 Recordings. iHeartMedia has therefore benefitted from the use of Pre-1972 Recordings.

61. iHeartMedia's wrongful conduct has no justification, and violates the fundamental principles of justice, equity, and good conscience, and it would be unjust for iHeartMedia to retain the benefits attained by its unlicensed and wrongful use of the Plaintiffs' Recordings. Because Plaintiffs have no adequate remedy at law, Plaintiffs seek, on behalf of themselves and the Misappropriation Class, full restitution of iHeartMedia's enrichment, benefits, and ill-gotten gains acquired as a result of the unlawful and/or wrongful conduct alleged herein.

## PRAYER FOR RELIEF

62. WHEREFORE, on their own behalf and on behalf of the Misappropriation Class,

010535-11 806082 V1

Plaintiffs pray for judgment against iHeartMedia as follows:

a) Certification of the action as a Class Action pursuant to the Federal Rules of Civil Procedure, and appointment of Plaintiffs as the Class Representatives and their counsel of record as Class Counsel;

b) Actual damages, punitive damages, and such other relief as provided by the statutes and common law cited herein;

c) Disgorgement of all profits earned by iHeartMedia from copying, publicly performing, and otherwise exploiting Pre-1972 Recordings in internet and terrestrial radio services;

d) A constructive trust on any money acquired by means of iHeartMedia's conversion, including all gross receipts attributable to iHeartMedia's conversion of the Pre-1972 Recordings;

e) Prejudgment and post-judgment interest on any monetary relief;

f) Equitable relief enjoining future unauthorized use of Pre-1972 Recordings in internet and terrestrial radio services;

g) The costs of bringing this suit, including reasonable attorneys' fees; and

h) All other relief to which Plaintiffs and class members may be entitled at law or in equity.

Dated: October 19, 2015

Respectfully Submitted,

By: s/ *Elizabeth A. Fegan*
    Elizabeth A. Fegan

HAGENS BERMAN SOBOL SHAPIRO LLP
Elizabeth A. Fegan, IL Bar #6229226
455 N. Cityfront Plaza Drive, Suite 2410
Chicago, Illinois 60611
Telephone: 708-628-4949
Facsimile: 708-628-4950
beth@hbsslaw.com

Steve W. Berman, IL Bar # 3126833
1918 Eighth Avenue, Suite 3300
Seattle, Washington 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com

010535-11 806082 V1

Robert B. Carey (*pro hac vice pending*)
John M. DeStefano (*pro hac vice pending*)
11 West Jefferson Street, Suite 1000
Phoenix, Arizona 85003
Telephone: (602) 840-5900
Facsimile: (602) 840-3012
rob@hbsslaw.com
johnd@hbsslaw.com

ABNER & FULLERTON LLP
Anthony L. Abner (*pro hac vice pending*)
32565 Golden Lantern Blvd., Suite 216
Dana Point, California 92945
Telephone: (323) 839-3291
Facsimile: (323) 656-7155
tonyabner@gmail.com

*Attorneys for Plaintiffs*